**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

OI EUROPEAN GROUP B.V.,

*Plaintiff*,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

*Defendant*.

Case No. 1:16-cv-01533-ABJ

**DEFENDANT BOLIVARIAN REPUBLIC OF VENEZUELA'S
COMBINED MOTION FOR A 120-DAY STAY AND
RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant Bolivarian Republic of Venezuela (the "Republic") respectfully submits this combined (i) motion for a 120-day stay of proceedings and (ii) response to Plaintiff OI European Group B.V.'s ("OIEG") motion for summary judgment. The Republic seeks a stay as a matter of international comity and in recognition of its unprecedented political, social, and economic circumstances. Furthermore, whenever this Court deems it appropriate to enter judgment against the Republic, it should do so on the terms provided for under 28 U.S.C. § 1961, which sets the mandatory post-judgment interest rate for all federal judgments.

**RELEVANT BACKGROUND**

**A. Political Uncertainty in Venezuela**

Since January 10, 2019, National Assembly President Juan Guaidó has acted as interim President of Venezuela pursuant to Article 233 of the Venezuelan Constitution. On January 23, after President Guaidó ratified the application of Article 233, President Donald Trump issued a

statement recognizing Mr. Guaidó as interim President of Venezuela and rejecting the legitimacy of Nicolas Maduro's regime.[1]

In response to President Trump's recognition of President Guaidó, former president Maduro purported to expel all American diplomatic personnel from Venezuela.  Secretary of State Mike Pompeo rejected Mr. Maduro's assertion of political and diplomatic authority, stating that "[t]he United States does not recognize the Maduro regime as the government of Venezuela."  He explained that "the United States maintains diplomatic relations with Venezuela and will conduct our relations with Venezuela through the government of interim President Guaidó, who has invited our mission to remain in Venezuela."[2]

On February 25, Vice President Mike Pence reiterated the position of the United States: "President Guaidó, President Donald Trump asked me to be here today to deliver a simple message to you and to the people of Venezuela: *Estamos con ustedes*. We are with you 100 percent.  We stand with you in America, along with all the nations gathered here today, and we will keep standing with you until democracy and your *libertad* are restored."[3]

To facilitate the transition to the Guaidó government, the Venezuelan National Assembly enacted the "Statute Governing the Transition to Democracy to Restore the Validity of the Constitution of the Bolivarian Republic of Venezuela" (the "Transition Statute") (Pizzurro Decl. ¶ 3).[4]  On February 5, 2019, pursuant to the authority granted in Article 15.b of the Transition

---

[1] The White House, *Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela* (Jan. 23, 2019), available at https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela/.

[2] U.S. Dep't of State, *Press Statement, Continuing U.S. Diplomatic Presence in Venezuela* (Jan. 23, 2019), available at https://www.state.gov/secretary/remarks/2019/01/288545.htm.

[3] The White House, *Remarks by Vice President Pence to the Lima Group, Bogota, Colombia* (Feb. 25, 2019), available at https://www.whitehouse.gov/briefings-statements/remarks-vice-president-pence-lima-group-bogota-colombia/.

[4] Citations to "Pizzurro Decl." refer to the Declaration of Joseph D. Pizzurro in Support of Defendant Bolivarian Republic of Venezuela's Emergency Motion to Strike, dated March 28, 2019.  ECF No. 58-1.

Statute, President Guaidó appointed José Ignacio Hernández as Special Attorney General of Venezuela and granted Mr. Hernández the power to appoint counsel of the Republic.  (*Id.*, Ex. 1).  On February 27, the National Assembly approved the appointment of Mr. Hernández and, on March 19, passed a resolution ratifying Mr. Hernández as the only person having the power to represent the Republic and to appoint legal counsel in cases outside of Venezuela.  (*Id.*, Ex. 2).

On March 28, Mr. Hernández engaged the undersigned to appear on behalf of the Republic in these proceedings.  (*Id.* ¶ 5).  The law firms GST LLP and PilieroMazza PLLC have not acted in these proceedings on the instructions of the Guaidó government.[5]  (*Id.* ¶ 6).

### A.  Procedural Background

Plaintiff brought this action to recognize and enforce an award rendered against the Republic pursuant to the Convention on the Settlement of Investments Disputes between States and Nationals of Other States (the "ICSID Convention").  ECF No. 1.  The Republic moved to dismiss the complaint on several grounds or to stay proceedings pending resolution of an application to annul the award.  ECF No. 23.  This Court granted the stay and, upon resolution of the annulment proceedings, lifted the stay on December 18, 2018.

Following the United States' recognition of the Guaidó government, this Court held a hearing on March 8, 2019, in which it denied the Republic's motion to dismiss and directed the parties to submit a joint status report.  No representatives of the Guaidó government were present at the hearing.  On March 14, OIEG filed a "joint" status report in which counsel represented that the parties had agreed to a briefing schedule pursuant to which OIEG would file a motion for summary judgment by March 27.  ECF No. 55.  Instead of filing a motion, on March 27, OIEG filed a Stipulated Order for Final Judgment (the "Stipulation").  ECF No. 56.

---

[5] On Friday, April 12, counsel from PilieroMazza PLLC filed a notice of withdrawal.  ECF No. 70.

The following day, the Republic, by the only counsel authorized to act in these proceedings on the instructions of the Guaidó government, moved on an emergency basis to strike the Stipulation on the grounds that it had been filed without the consent of the Guaidó government.  ECF No. 58.  OIEG filed a response in which it agreed that it would be imprudent to enter judgment on the basis of the Stipulation and concurrently moved for summary judgment.  ECF Nos. 59, 60.  On April 2, this Court granted the motion to strike the Stipulation and directed the Republic to file a response to the summary judgment motion by April 15.

On April 4, the GST law firm moved for reconsideration of the Court's April 2 Minute Order.  ECF No. 65.  In response, the Republic moved to strike GST's motion.  ECF No. 67.  On April 10, this Court entered a Minute Order directing the parties, including representatives of the firms who have entered appearances on behalf of the Republic, to appear before the Court for a status conference on April 15, and suspending any further briefing on GST's and the Republic's motions (ECF Nos. 65 and 67, respectively).  Upon the Republic's motion for a continuance, the status conference was rescheduled for May 2.  This Court has not expressly suspended briefing on OIEG's motion for summary judgment.  Accordingly, the Republic now files its response to the motion for summary judgment and concurrently moves for a 120-day stay of proceedings.

## ARGUMENT

## I.   THIS COURT SHOULD GRANT A 120-DAY STAY AS A MATTER OF COMITY

This Court "has inherent power to stay proceedings in control of its docket, after balancing the competing interests."  *Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936));  *see Feld Entm't, Inc. v. ASPCA*, 523 F. Supp. 2d 1, 3 (D.D.C. 2007) (granting a temporary stay where the hardship of defending the lawsuit was greater than any prejudice that could potentially result from a short delay).

"Especially in cases of extraordinary public moment, [a litigant] may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis*, 299 U.S. at 256.  Courts have stayed litigation against foreign states during periods of political uncertainty or when other foreign relations concerns call for caution.  *See Gov't of France v. Isbrandtsen-Moller Co.*, 48 F. Supp. 631, 633 (S.D.N.Y. 1943) (staying all proceedings until 60 days after French government was again recognized by the United States); *Thai-Lao Lignite (Thail.) Co. v. Gov't of the LAO People's Democratic Republic*, Nos. 13-495 (L), 13-545 (Con) 13-1844, 2013 U.S. App. LEXIS 26396, at *5 (2d Cir. May 28, 2013) (finding cause to stay discovery order where "issues of sufficient foreign relations sensitivity" were at stake).

Here, a limited stay is necessary to allow the newly installed government of President Guaidó to conduct an orderly transition to democracy.  The Guaidó government is working toward the goal of a full transition of power.  This transition will likely have far-reaching political, economic, and social consequences, both within the Republic and internationally.  At the present time, President Guaidó and his fledgling administration are tasked with prioritizing the pressing concerns of a country that is suffering from crippling inflation, overwhelming poverty (upwards of ninety percent of Venezuelans are living in poverty), and widespread malnutrition and disease.

In addition, President Guaidó is still staffing his government with the necessary legal advisors to evaluate the Republic's position in all cases currently pending in United States courts.  In this very fluid circumstance, adequate time is necessary to ensure that the Republic is able to make fully informed decisions that protect the interests of the Republic during this crucial moment in Venezuela's history.  Since the United States recognized the Guaidó government,

courts have granted plaintiffs' and defendants' requests for limited or indefinite stays of

proceedings on the basis of the same political uncertainty in Venezuela, including in a case

involving the recognition and enforcement of an arbitration award.  *See, e.g., Helmerich &*

*Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, S.A., No. 11-CV-01735, ECF No.

133 (D.D.C. Feb. 15, 2019) (granting motion by plaintiff for indefinite stay of proceedings);

*Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044, Doc. No. 1773506 (D.C.

Cir. Feb. 14, 2019) (granting motion by defendant for 120-day stay of proceedings).[6]

## II.   AT THE TIME SUMMARY JUDGMENT IS ENTERED, THE AWARD MERGES WITH THE JUDGMENT AND ANY POST-JUDGMENT INTEREST MUST ACCRUE AT THE MANDATORY FEDERAL RATE UNDER 28 U.S.C. § 1961

Whenever this Court considers it appropriate to enter summary judgment, the only

interest that can accrue post-judgment is the federal statutory rate set forth in 28 U.S.C. § 1961.

Section 1961 provides the mandatory post-judgment interest rate that applies to all

federal judgments, including judgments entered on arbitral awards.  *Westinghouse Credit Corp.*

*v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004); *see Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718

F.3d 448, 457 (5th Cir. 2013) ("A judgment confirming an arbitration award – like any other civil

judgment – is subject to § 1961."); *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021,

1024 (9th Cir. 2004) ("[O]nce an arbitration award is confirmed in federal court, the rate

specified in § 1961 applies."); *see, e.g., Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*,

300 F. Supp. 3d 137, 2018 U.S. Dist. LEXIS 34706, *26 (D.D.C. 2018); *Crystallex Int'l Corp. v.*

*Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100, 123 (D.D.C. 2017); *Miminco v.*

*Democratic Republic of the Congo*, 79 F. Supp. 3d 213, 218, 220 (D.D.C. 2015) (applying

---

[6] The Republic and its agencies or instrumentalities have sought stays in other cases as well.  *See* Order, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Nos. 18-2797, 18-2889, 18-3124 (3rd Cir. March 20, 2019) (advising that the Republic's motion to stay would be considered during oral argument scheduled for April 15, 2019); *Red Tree Investments, LLC v. Petroleos de Venezuela, S.A.*, No. 1:19-cv-002519, No. 1:19-cv-002523 (motions filed on March 27, 2019, and decisions are still pending).

section 1961 to an ICSID award); Order and Judgment, *Sempra Energy Int'l v. Argentine Republic*, No. M-82, Dkt. No. 45 (S.D.N.Y. Nov. 14, 2007) (same) (attached hereto as Exhibit A); Order and Judgment, *Enron Corp. v. Argentine Republic*, No. M-82, Dkt. No. 46 (S.D.N.Y. Nov. 20, 2007) (same) (attached hereto as Exhibit B). Section 1961 applies even if the arbitral award provides for a different interest rate. *See Tricon Energy*, 718 F.3d at 459; *Westinghouse*, 371 F.3d at 102; *Rusoro*, 2018 U.S. Dist. LEXIS 34706, *26 (entering judgment on an arbitration award with "interest as provided by the arbitral tribunal, accruing through the date of this order," and "post-judgment interest, pursuant to 28 U.S.C. § 1961"); *Crystallex*, 244 F. Supp. 3d at 123 (same).

The primary basis for the application of section 1961 to judgments on arbitral awards is the merger doctrine. *See Westinghouse*, 371 F.3d at 102. Under that doctrine, the obligations owed under an arbitral award merge into the judgment and, as a result, the rate provided under section 1961 applies. *See id.* In other words, once a plaintiff obtains a judgment on an ICSID award it no longer has an ICSID award – it has a federal court judgment. Section 1961 can only be overridden in cases involving arbitral awards where (1) the parties explicitly agreed to apply a different post-judgment interest rate and (2) the arbitral award explicitly provides for post-judgment interest as opposed to post-award interest. *See Tricon Energy*, 718 F.3d at 459; *FCS Advisors, Inc. v. Fair Fin. Co.*, 605 F.3d 144, 148 (2d Cir. 2010); *In re Riebesell*, 586 F.3d 782, 794 (10th Cir. 2009); *Westinghouse*, 371 F.3d at 102; *Aboulhosn v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 940 F. Supp. 2d 1203, 1228 (C.D. Cal. 2013).

Courts require a high degree of specificity in order to override section 1961. Generalized language – such as specifying an interest rate to apply "until paid" or "to date of payment" – is insufficient to override section 1961. *See Westinghouse*, 371 F.3d at 102 ("[The parties] agreed

that a 15.5 percent interest rate would be added to any arbitration award 'from the date payment was due to the date payment is made.' *The parties failed to state that this rate would apply to judgments rendered on that award*." (emphasis added)); *see also Tricon Energy*, 718 F.3d at 459 (arbitral award providing for interest "at the rate of 8.5% per annum … [from] the date of th[e] award, until paid" was not sufficiently explicit to displace section 1961).  Here, the award does not provide for *post-judgment* interest, as opposed to *post-award* interest, and OIEG has not pointed to any agreement between the parties explicitly providing for post-judgment interest. Thus, once this Court enters judgment on the award, section 1961 governs.

OIEG ignores this entire body of law and, relying on a single out-of-circuit, district court decision that was vacated for lack of jurisdiction, argues that section 1961 does not apply because the ICSID Convention and its federal implementing statute, 22 U.S.C. § 1650a, call for ICSID awards to be enforced according their terms.  Pl.'s Br. 7 & n.3.  However, neither the ICSID Convention nor section 1650a specifies how courts should treat the interest rate once the ICSID award is reduced to a judgment.  What section 1650a does expressly require is that ICSID awards be enforced as if they were state court judgments.  22 U.S.C. § 1650a(a).  And federal courts enforcing state court judgments consistently provide for post-judgment interest at the federal rate under section 1961.  *See, e.g.*, Judgment, *Vera v. Republic of Cuba*, No. 12 Civ. 1596 (S.D.N.Y. Aug. 17, 2012) (applying the federal "judgment rate" instead of the 11 percent requested by the plaintiff) (attached hereto as Exhibit C); Judgment, *Hausler v. Republic of Cuba*, No. 08 Civ. 20197 (S.D. Fla. July 28, 2008) (applying "post-judgment interest" under section 1961 instead of the 9 percent imposed on the state court judgment under Florida law) (attached hereto as Exhibit D).  ICSID awards are entitled to no better treatment.

Section 1650a's reference to "pecuniary obligations" does not alter this analysis.  The pecuniary obligations imposed by an ICSID award, like the pecuniary obligations of any arbitration award, merge with the judgment and cease to have any independent effect once the award is converted to a federal judgment.  In any event, the award does not contain a pecuniary obligation to pay *post-judgment* interest as opposed to post-award interest.[7]  Thus, applying section 1961 does not conflict with the ICSID implementing statute or the ICSID Convention.

## **CONCLUSION**

In sum, this Court should grant the Republic's request to stay proceedings for 120 days. Furthermore, whenever this Court decides to enter judgment, it must provide for post-judgment interest at the federal statutory rate set forth in 28 U.S.C. § 1961.

Respectfully submitted,

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By:  _/s/ Joseph D. Pizzurro_
Joseph D. Pizzurro
(D.C. Bar No. 468922)
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.:  (202) 452-7373
Fax:  (202) 452-7333
Email:  jpizzurro@curtis.com

*Attorneys for Defendant*
*Bolivarian Republic of Venezuela*

Dated: April 15, 2019

---

[7] Furthermore, section 1961, which speaks directly to the interest rate to be applied on a judgment rendered in federal court, trumps any general language in the earlier-enacted Section 1650a.  *See, e.g., Greene v. United States*, 79 F.3d 1348, 1355 (2d Cir. 1996) (applying the statute that "speaks directly" to the specific matter at hand).