UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| **OI European Group, B.V.,** | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Case No. 1:16-cv-01533-ABJ |
|  | ) |
| **Bolivarian Republic of Venezuela,** | ) |
|  | ) |
| Defendant. | ) |
| _____ | ) |

**THE BOLIVARIAN REPUBLIC OF VENEZUELA'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant, the Bolivarian Republic of Venezuela (the "Republic"), through its undersigned counsel and pursuant to this Court's Minute Order of April 1, 2019 and Federal Rule of Civil Procedure 56, hereby responds to Plaintiff's Motion for Summary Judgment (the "Motion") [ECF No. 60] and in support states as follows:

**BRIEF PROCEDURAL BACKGROUND**

These proceedings arise from the award issued by an ICSID tribunal in the matter of *OIEG v. Venezuela,* ICSID Case No. 11/25, on March 10, 2015 (the "Award"), granting OIEG USD 372,461,982, plus interest. The Award is for compensation for the expropriation of OIEG's interest in two Venezuelan companies, Owens-Illinois de Venezuela, C.A. and Fábrica de Vidrios Los Andes, C.A. (collectively, "OIEG's subsidiaries"). *See* ECF 1-14. Shortly thereafter, on July 7, 2015, the Republic filed for annulment of the Award before ICSID on the grounds that the tribunal had not been properly constituted, had manifestly exceeded its powers, had

1

committed a serious departure of a fundamental rule of procedure and had failed to state reasons for the Award. ECF No. 52-1.

On July 27, 2016, OIEG filed a Complaint before this Court seeking recognition and enforcement of this Award. *See generally,* ECF 1. After being served with the Complaint, the Republic filed its Motion to Dismiss on August 27, 2017. ECF No. 23. During the pendency of the annulment, this Court stayed these proceedings. *See* Minute Order, dated December 21, 2017.

During the pendency of these proceedings, OIEG's subsidiaries were also pursuing claims against the Republic arising out of the same expropriatory acts for which OIEG had been compensated for in the Award (the "Parallel Arbitration"). In the Parallel Arbitration, the Tribunal decided that it lacked jurisdiction and issued an award dismissing the matter (the "Second Award"). Shortly thereafter, the OIEG subsidiaries sought annulment of the Second Award. A decision is currently pending on that annulment application.

On December 6, 2018, the Parties received the decision on annulment of the Award that is the subject of these proceedings. *See* ECF No. 52-1. This Court entered a minute order lifting the stay and thereafter held a status conference on March 8, 2019 (the "Status Conference"). At the Status Conference both OIEG and the Republic appeared, the latter represented by the firm of GST LLP. *See generally,* Transcript of Status Conference held on March 8, 2019 (the "Hr. Tr'g"). *See* ECF 54. The Court denied the Republic's Motion to Dismiss, and allowed the parties to submit a joint proposed briefing schedule. Hr. Tr'g. 29:27-25. At the Status Conference, the Republic also requested and was granted permission to file a motion for substitution or joinder under Rule 25 as OIEG had since filing the Complaint transferred its interest in the Award. Hr. Tr'g 27:1-3; 29:1-15. The terms of the transfer of interest are unknown and OIEG has to date not provided any information. Hr. Tr'g. 27:2-4; 28:1-7.

The Parties filed a stipulation for final judgment (the "Stipulation") on March 27, 2019. *See* ECF No. 56. A day after the filing of the Stipulation, attorney Joseph Dominic Pizzurro from the law firm of Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis") entered an appearance purportedly on behalf of the Republic. *See* ECF No. 57. On that same day, Curtis filed an Emergency Motion to Strike the Stipulation ("Motion to Strike"), purportedly on behalf of the Republic. *See* ECF No. 58.

Curtis did not move this Court to substitute as counsel for the Republic. On April 1, 2019, this Court entered a minute order providing a deadline of April 15, 2019, for any response to the Motion to Strike. *See* Court's Minute Order of April 1, 2019. On April 1, 2019, OIEG filed a response to the Motion to Strike [ECF No. 59] and simultaneously filed a Motion for Summary Judgment [ECF No. 60], accompanying memorandum of law [ECF No. 61] and a proposed motion for Order granting Plaintiff's Motion for Summary Judgment [ECF No. 62]. The next day, before the deadline to respond to the motion to strike, this Court entered a Minute Order granting the Motion to Strike and ordering the Republic to file its opposition to the Motion for Summary Judgment by April 15, 2019. *See* Court's Minute Order of April 2, 2019.

Shortly thereafter, the Republic filed its Motion for Reconsideration of the Court's Minute Order of April 2, 2019, striking the Stipulation. *See* ECF No. 65. Both OIEG and Curtis opposed the Motion for Reconsideration. *See* ECF Nos. 66, 67. The Court has since stayed any further briefing on the issue but has not stayed the deadline for responding to OIEG's Motion for Summary Judgment. *See* Court's Minute Order of April 2, 2019 and Court's Minute Order of April 12, 2019. To fully preserve the Republic's rights pending the ruling on the Motion for Reconsideration, GST has submitted this response.

**DISPUTED ISSUES**

*The Stipulation*

After appearing before this Court on March 8, 2019, representatives of OIEG and representatives of the Republic engaged in negotiations and in good faith reached the Stipulation in this matter on March 27, 2019. *See* ECF No. 56. The existence of the Stipulation is a question that prohibits summary judgment. GST LLP had the authority to enter into the Stipulation and continues to have authority to act as counsel in these proceedings on behalf of the Republic. *See* Declaration of Mr. Facchinetti, ¶¶ 5-6, attached as **Exhibit A**. The amount of compensation in the Stipulation provides that it fully compensates for OIEG's interest, but not the minority interest held by OIEG's subsidiaries. *See* ECF. No. 56, ¶ 5.  Per the terms of the Stipulation, once a final judgment is entered the Award amount would accrue interest at the rate set forth in 28 U.S.C. § 1961, and not at the rate set forth in the Award. *See* ECF No. 56, p. 3.

At the time of these discussions and in entering into the Stipulation, counsel for OIEG was aware of the limited recognition that had been granted by Trump's Administration to Juan Guaidó as "Interim President of the Republic" as it was also aware of the fact that Guaidó had appointed Jose Hernandez as his attorney general and had sought to intervene in the appeal pending before the Third Circuit in the *Crystallex* case.[1] In a parallel case OIEG had filed against the Republic, the attorneys representing PDV Holding, Inc., CITGO Holding and CITGO Petroleum Corporation (the "CITGO Defendants") in that case asked for a stay pending a decision of the Third Circuit in *Crystallex International Corp. v. Bolivarian Republic of Venezuela* (3d Cir. Appeal Nos. 18-2797 & 18-3124). *See OIEG v. Republic of Venezuela,* Case

---

[1] *US Court allows Venezuela's Guaido to argue in Crystallex Case,* REUTERS, Mar. 21, 2019, https://www.reuters.com/article/us-venezuela-politics-crystallex/u-s-court-allows-venezuelas-guaido-to-argue-in-crystallex-case-idUSKCN1R22C4

No. 19-cv-00290, ECF No. 19 (Mar. 18, 2019). In support of their motion to stay, the CITGO Defendants cited to the stay granted in the *Crystallex* case, in which Guaido's Government had sought and obtained a right to intervene. OIEG now seeks to distance itself and undo the Stipulation it had entered into with the Republic. *See* ECF Nos. 59 and 66.

After the Parties entered into the Stipulation, Curtis has argued that GST LLP did not have the authority to bind the Republic in the Stipulation, unilaterally asserting that it is acting now as counsel for the Republic. *See* ECF No. 67. There has been no decision on this matter to date, and therefore it is GST LLP's position that GST LLP continues as counsel for the Republic in this and other matters.

*The Parallel Arbitration*

The Parties do not completely agree on the fact that the Parallel Arbitration seeks compensation exclusively for the minority shareholders. As discussed at the Status Conference, the Republic expressed concern with the fact that OIEG's subsidiaries had filed the same claims in the Parallel Arbitration, seeking the same compensation as the Award. *See* Declaration of Mr. Facchinetti, ¶ 3. *See also,* Hr. Tr'g at 27:5-12. As long as there is a pending decision on Annulment, with a stricken Stipulation, the Republic is still at risk of having to potentially having to defend against the same claims twice. *See* Hr. Tr'g at 28:1-7.

*The Applicable Interest Rate*

As a matter of law, the Parties do not agree on the applicable interest rate. After entering into the Stipulation, OIEG now claims that the post-judgment interest should accrue at the rate set forth in the OIEG Award. *See* ECF No. 61, p. 9. The parties therefore dispute the applicable interest to be applied from the date of judgment, as the Award does not adopt the rate set out in 28 U.S.C. § 1961, the rate adopted by the parties in the Stipulation and required by Federal law.

**MEMORANDUM OF LAW**

I. **There are genuine disputed material facts that prevent granting OIEG's motion for summary judgment**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue is one whose resolution could establish an element of a claim or defense and, therefore affect the outcome of the action." *See, e.g., Mori v. Dep't of Navy,* 731 F. Supp. 2d 43, 45 (D.C.C. 2010) (internal citations omitted). The moving party bears the initial burden of showing the inexistence of a genuine disputed material fact. *See, e.g., Moncada v. Peters,* 579 F. Supp. 2d 46, 50 (D.C.C. 2008).

The evidence presented must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). Where material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is not appropriate. *See, Hinton v. U.S.,* 714 F. Supp. 2d. 157, 160 (D.C.C. 2010). The Court's role is not to determine the truth of the matter but simply determine whether there is a genuine issue for trial." *See, e.g., Kubicki on behalf of Kubicki v. Medtronic, Inc.,* 293 F. Supp. 3d. 129, 155 (D.D.C. 2018). A motion for summary judgment can be defeated through factual representations of facts on the record made in a sworn affidavit. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). These sworn statements generally must be accepted as true for the purpose of ruling on a motion for summary judgment. *See, e.g., Greene v. Dalton,* 164. F. 3d. 671, 675 (D.C. Cir. 1999).

### A.  A genuine dispute exists as to whether the Parties entered into a valid Stipulation in this matter

Federal courts treat stipulations as binding on the parties and the court, and generally these cannot be "disregarded or set aside at will." *See, e.g., U.S. v. Kanu,* 695 F.3d 74, 78 (DC Cir. 2012) (citing to *Wheeler v. John Deere Co.,* 935 F.2d 1090 (10th Cir. 1991). Generally, courts will enforce stipulations, unless doing so would work injustice. *See id.* Stipulations, "like other contracts, must be interpreted in light of the circumstances under which the agreement was made." *Id.* (citing to *Nat'l Audubon Soc'y, Inc. v. Watt,* 678 F.2d 299, 307 (D.C. Cir. 1982).

Prior to OIEG's filing of the Motion, OIEG and the Republic had entered into the Stipulation filed on March 27, 2019. *See* ECF No. 56. OIEG now seeks to ignore the fact that it entered into the Stipulation, claiming that it was "not aware that a contest existed as to which law firm was authorized to speak for Venezuela." *See* ECF No. 66, p. 1.

But OIEG did have knowledge at the time of entering into the Stipulation. First, OIEG was aware as early as January 23, 2019, that President Trump had publicly announced that Mr. Guaidó was now recognized by the United States as the "Interim President" of the Republic.[2] Moreover, in parallel US cases in which OIEG is involved, counsel also was aware that Mr. Guaidó's government was seeking to intervene in the Third Circuit case pending against the Republic.

OIEG attempts to argue that this Court need not reach the question as to who is to speak for the Republic and can simply rule on the Motion for Summary Judgment, should neither firm that purports to speak for the Republic advance a substantive defense. *See* ECF No. 61 p. 6.

---

[2] Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela, issued on January 23, 2019, *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela/

Doing so, would ignore the circumstances of this case and the Stipulation freely entered into by OIEG with the Republic, further prejudicing the Republic's rights. When OIEG and Venezuela negotiated the settlement, they did so in exchange for valuable consideration. The negotiations were not undertaken lightly, and the result represents an important gain for the Republic, which the Court should accept.

### B. A question of law exists regarding the applicable post-judgment interest rate to be applied

As outlined above, the Stipulation provided for the interest rate to accrue at the rate set forth in 28 U.S.C. § 1961 from the date this Court enters judgment. The Republic had negotiated the application of this rate with OIEG, and OIEG had validly accepted the application of 28 U.S.C. § 1961 in the Stipulation. *See* ECF No. 56. Sensing an opportunity to improve its position, OIEG now seeks to have the rate set forth in the Award apply. Applying the text of 22 U.S.C. § 1650a, OIEG still cannot get its desired result.

OIEG argues that Section 1961(a) does not apply because the underlying judgment did not arise in a federal district court, and therefore is exempt from the statutory federal post-judgment interest rate. *See* ECF No. 61 at 9. This argument has no statutory basis. 22 U.S.C. § 1650a requires that "[t]he pecuniary obligations imposed by" an ICSID award "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." The controlling statute puts ICSID awards on equal footing with State court judgments, not as a separate, higher species of judgments.

US courts have applied the statutory post-judgment rate (Section 1961) to sister-state judgments enforced in federal court. In *North Carolina Nat. Bank v. Marden*, 561 F. Supp. 698 (W.D.N.C. 1983), the plaintiff brought an action in diversity to enforce an underlying state court judgment. *Id.* at 699. The district court stated that it had "no power to affect the post-judgment

8

interest rate awarded by the North Carolina state court . . . already accrued up to the entry of this Court's judgment," but plainly held that "the interest to be applied prospectively from the filing of this Judgment is governed by 28 U.S.C. § 1961(a)[.]" *Id*. The court further found that the exemption in Section 1961(c)(4), applied only to the period between the date of the state court judgment and the entry of judgment in the federal case, and that following entry of the federal judgment, the federal interest rate under Section 1961 governed. *Id. See also, Madrigal v. Allstate Ins. Co.*, No. CV 14-4242 SS, 2016 WL 6694968, at *6 (C.D. Cal. May 19, 2016), *aff'd sub nom. Madrigal v. Allstate Indem. Co.*, 697 F. App'x 905 (9th Cir. 2017).

The Republic only advocates for the same result. As contained in the Stipulation, the Republic agreed to calculate interest as required of a State court judgment, exactly as the *Marden* court did. The Republic is not requesting that the Court supervene the ICSID's panel determination of the interest rate. Rather, the Republic argues that the rate applicable to federal court judgments should be rate applied by this Court once a judgment is entered in favor of OIEG. As long as OIEG argues otherwise, it is not entitled to summary judgment on the grounds sought.

OIEG's reference to the decision in *Mobil Cerro Negro v. Venezuela* does not change this fundamental requirement of Section 1650a. In *Mobil*, the Southern District of New York decided that it would apply the award's interest rate, but it did not reach this conclusion based on an interpretation of the language that and ICSID Award "be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." Rather, the Court's focus was to distinguish it from cases arising under the FAA. In any event, as acknowledged by OIEG, the Second Circuit never passed judgment on the appropriate interest rate, leaving the field rather open to this Court's independent analysis of the statute. *See* ECF No.

9

61, at fn. 3. Here, the Court need only decide if the Award should receive the same treatment as a State court judgment (as required by Section 1650a), or if it should get superior treatment, merely because it is an ICSID award. Counsel has found no decision on this point in this Circuit, and there is no barrier to this Court adopting Venezuela's sounder statutory analysis.

### C. A genuine dispute exists as to whether this case fully compensates OIEG

As the Republic has reiterated previously, questions surrounding the impact of the Parallel Arbitration and the sale of OIEG's interest in the Award remain unanswered. These issues are important to resolving this dispute and ensuring that the Republic is not subject to undue prejudice of having to relitigate the same issues or bear liability for the same claims at a later date.

OIEG could have, but to date has refused to disclose the terms of the sale of its interest in the Award to the third-party.[3] *See* ECF No. 27. There is no assurance that this unknown third-party has not also acquired an interest in the Second Award, as explained at the March 8, 2019, Status Conference. Hr. Tr'g. 27:2-5; 28:1-7. There is still the risk that the Republic may be subject to double liability over the same claims. As explained by the Republic's counsel, the Parallel Arbitration involves the same claims, and there is no indication that OIEG's subsidiaries are merely seeking to recover the compensation for the minority shareholders. *See* Hr. Tr'g 27:2-12. To the contrary, during the Parallel Arbitration, OIEG's subsidiaries had refused to make it clear that they were not seeking double recovery.[4] As a result, the Republic is exposed to a

---

[3] Simultaneous with this Response, the Republic has also filed its Motion for Joinder of the Third Party (real-party of interest) to reduce any potential prejudice to the Republic and to preserve its rights.

[4] *See* **Exhibit B**, the Award in *Fábrica de Vidrios Los Andes, C.A. & Owen-Illinois de Venezuela, C.A. v. Bolivarian Republic of Venezuela,* ICSID Case No. ARB/12/21 ¶ 61-62. ("On August 17, 2015, the Respondent requested that the Claimants readjust their claims in this arbitration in light of the award rendered in the Parallel Arbitration [*OIEG v. Republic of*

potential of double recovery should the Award in the Parallel Arbitration be annulled, leaving the Republic susceptible to double liability and additional future US proceedings seeking to recognize and enforce a second award for the same claims.

In light of the above, the Republic respectfully requests that this Court deny OIEG's Motion for Summary Judgment [ECF No. 60] and grant any other and further relief this Court deems just and proper.

                                          Respectfully submitted,

                                          */s/ Quinn Smith*

                                          **GST LLP**
                                          Rodney Quinn Smith
                                          DCD Bar No. FL0027
                                          e-mail: quinn.smith@gstllp.com
                                          Katherine A. Sanoja
                                          DCD Bar No. 1019983
                                          e-mail: katherine.sanoja@gstllp.com
                                          1111 Brickell Avenue, Suite 2715
                                          Miami, Florida 33131
                                          (T) (305) 856-7723
                                          (F) (786) 220-8265

---

*Venezuela*], and a commitment from the Claimants [OIEG's subsidiaries] not to seek double recovery in this arbitration." In response, "Claimants requested the Tribunal to reject the Respondent's requests of August 17, 2015").

## **CERTIFICATE OF SERVICE**

  I hereby certify that on April 15, 2019, I electronically filed this document with the Clerk of the Court of the U.S. District Court of the District of Columbia by using the CM/ECF system, which will automatically generate and serve notices of this filing to all counsel off record. I further certify that I am unaware of any parties who will not receive such notice.

         By: /s/ *Katherine Sanoja*
            Katherine Sanoja