# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| OI EUROPEAN GROUP B.V., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-1533 (ABJ) |
| | ) | |
| BOLIVARIAN REPUBLIC OF | ) | |
| VENEZUELA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Owens-Illinois European Group ("OIEG") brought this action pursuant to 22 U.S.C. § 1650a and Article 54 of the International Centre for Settlement of Investment Disputes ("ICSID") Convention against the Bolivarian Republic of Venezuela seeking to confirm and enforce an arbitration award of more than $400 million. Compl. [Dkt. # 1]. In October of 2010, OIEG's factories were expropriated by the Venezuelan government, then headed by Hugo Chávez, and on September 7, 2011, OIEG commenced arbitration against Venezuela pursuant to the Netherlands-Venezuela Bilateral Investment Treaty. *Id.* ¶¶ 6, 12; Final Award [Dkt. # 1-10] ¶¶ 1, 110. On March 10, 2015, the tribunal found in favor of plaintiff, and it awarded OIEG $372,461,982 for the expropriation and $5,750,000 in costs and expenses. *See* Final Award [Dkt. # 1-14] ¶¶ 880–81, 976.

A motion to dismiss has already been heard and denied, *see* Mar. 8, 2019 Hr'g Tr. [Dkt. # 54] ("3/8 Hr'g Tr."), and plaintiff has filed a motion for summary judgment seeking confirmation of the Award. Pl.'s Mot. for Summ. J. [Dkt. # 60] ("Pl.'s Mot."). Because 22 U.S.C. § 1650a requires this Court to confirm an arbitral award obtained under ICSID, and the

sole issue raised in defendant's opposition pertains to the applicable post-judgment interest rate, the Court will enter judgment for plaintiff.

## BACKGROUND

### I.   International Centre for Settlement of Investment Disputes ("ICSID")

The International Convention on the Settlement of Investment Disputes between States and Nationals of Other States is a multilateral treaty designed to provide a legal framework for resolving disputes between private investors and governments.  Preamble, Mar. 18, 1965, 17 U.S.T. 1270 ("ICSID Convention").  The ICSID Convention established the International Centre for Settlement of Investment Disputes, which has the authority to convene arbitration tribunals to adjudicate disputes between international investors and host governments in contracting states. *Id.* art. 1.  "Any Contracting State or any national of a Contracting State" may request that ICSID convene an arbitration tribunal.  *See id.* art. 36. The tribunal, which consists of either a single arbitrator or "any uneven number of arbitrators," *id.* art. 37, considers the dispute and issues a written award, which "deal[s] with every question submitted to the [t]ribunal, and . . . state[s] the reasons upon which it is based." *Id.* art. 48.

The parties have multiple avenues for contesting the tribunal's award:  A party may request "revision" if there is a newly-discovered material fact previously unknown to the parties and arbitrator, *see id.* art. 51, or an "annulment" if a party challenges the tribunal's substantive decision.  *Id.* art. 52.  When a party seeks annulment, ICSID convenes an *ad hoc* committee of three members to review the award determination.  *Id.*  At a party's request, enforcement of an award is "stayed provisionally until the [c]ommittee" renders its decision.  *Id.*  But, "except to the extent that enforcement" has been stayed, the tribunal's award remains "binding on the parties and shall not be subject to any appeal or to any other remedy" other than those set forth in the ICSID Convention.  *Id.* art. 53.

2

ICSID is not empowered to enforce awards.  Prevailing parties must register their awards with a court of a member state.  The courts of member states are required to "recognize an award . . . as binding and [to] enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that [s]tate," or, for a member state with "a federal constitution," to "treat the award as if it were a final judgment of the courts of a constituent state."  *Id.* art. 54; *see* 22 U.S.C. § 1650a(a).

The United States has been a member of the ICSID Convention since 1966, and Congress has enacted legislation implementing the Convention:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.

22 U.S.C. § 1650a(a).

## II.      Factual and Procedural Background

Plaintiff is a corporation organized and existing under the laws of the Netherlands.  Pl.'s Statement of Undisputed Material Facts [Dkt. # 63] ("Pl.'s SOF") ¶ 1.  Plaintiff is part of a group of companies that operates glass container factories around the world, including in Venezuela.  *See* Final Award [Dkt. # 1-10] ¶¶ 86–87.  Plaintiff operated its Venezuelan glass factories through two of its subsidiaries, – Fábrica de Vidrios los Andes, ("Favianca") and Owens-Illinois de Venezuela, C.A. ("OIdv") – through which plaintiff held 72.983% equity interest in the Venezuelan factories.  *Id.* ¶ 87; *id.* [Dkt. # 1-14] ¶ 881.  A group of minority shareholders held the remaining 27.017% equity interest.  *See id.*  Defendant is the Bolivarian Republic of Venezuela.  Pl.'s SOF ¶ 2.

In October of 2010, the Venezuelan government expropriated plaintiff's Venezuelan glass factories, Final Award ¶¶ 110–14, and OIEG commenced arbitration against Venezuela on September 7, 2011. *Id.* ¶ 1. An arbitral tribunal was assembled by March 30, 2012, *id.* ¶ 21, and on September 16–21, 2013, the tribunal held a hearing in Paris, France to receive testimony and hear argument. *Id.* ¶¶ 66–67. On March 10, 2015, the tribunal issued a final arbitration award ("Award") in OIEG's favor. Pl.'s SOF ¶ 3; *see* Final Award. That Award consisted of:

- $372,461,982 for the expropriation in principal amount, plus interest from October 26, 2010 until payment in full calculated at a LIBOR interest rate for one-year deposits in U.S. dollars, plus a margin of 4% with annual compounding of accrued interest, Final Award ¶ 984(6);

- $5,750,000 for costs and expenses in the ICSID arbitration, plus interest from March 10, 2015 until payment in full calculated at a LIBOR interest rate for one-year deposits in U.S. dollars, plus a margin of 4% with annual compounding of accrued interest. *Id.* ¶ 976.

*See also* Pl.'s SOF ¶ 5.

Shortly thereafter, Venezuela sought annulment of the award in accordance with the ICSID convention. Pl.'s SOF ¶ 4; ICSID Convention art. 52. On July 17, 2015, the Annulment Committee entered a provisional stay of enforcement of the Award, but on April 4, 2016, that stay was terminated based upon the risk of Venezuela's non-compliance. Decision on Stay of Enforcement of the Award, Ex. B to Neudhardt Decl. [Dkt. # 27-8] ¶¶ 123–28, 130. Subsequently, OIEG filed suit in this Court to enforce its arbitration award, and after a year of multiple service attempts, plaintiff effectuated service on June 28, 2017. *See* Return of Service [Dkt. # 16].

On September 27, 2017, defendant moved to dismiss the complaint arguing that OIEG was not the real party in interest and Federal Rule of Civil Procedure 17 mandated dismissal, that OIEG had waived its right to claim that the decision is an enforceable final award, that OIEG

was impermissibly seeking double recovery,[1] and that the award was unenforceable because one

of the arbitrators on the tribunal was biased.  *See* Def.'s Mot. to Dismiss or Stay the Proceeding

[Dkt. # 23].  In the alternative, defendant moved to stay the proceedings pending the annulment

proceedings.  *See id.*  On December 21, 2017, the Court granted defendant's motion to stay.

Min. Order (Dec. 21, 2017).

Almost a year later, on December 10, 2018, plaintiff notified the Court that the

annulment committee had rejected defendant's application for annulment on December 6, 2018.

*See* Pl.'s Status Report [Dkt. # 52]; Annulment Comm. Decision [Dkt. # 52-1] ("Annulment

Decision").  And, the committee awarded plaintiff an additional $3,864,811.05 for costs and

expenses related to the annulment proceeding, plus interest from December 6, 2018 until

payment at the same rate provided for in the Award.   Annulment Decision ¶ 398.

The Court therefore lifted the stay on December 18, 2018, *see* Min. Order, and it denied

defendant's motion to dismiss in open court on March 8, 2019.  *See* 3/8 Hr'g Tr.  With respect to

the real party in interest issue, the Court found that Federal Rule of Civil Procedure 25, not Rule

17, applied, and Rule 25 did not mandate dismissal of the case.  *Id*. at 10:11–15:2.  It also held

that OIEG had not waived its right to enforce the award, that OIEG was not impermissibly

seeking double recovery, and that the arbitrator bias argument was not available to defendant

---

1    In addition to the OIEG Arbitration, the two subsidiaries, Favianca and OIdv, filed another, separate arbitration against Venezuela.  *See* Decl. of Diego Brian Gosis in Supp. of Mot. to Dismiss Compl. [Dkt. # 23-1] ("Gossis Decl.") ¶¶ 4–5.  This arbitration was presented to a different tribunal, and a final hearing for this arbitration was held on April 4–8, 2016.  *Id.* ¶ 5. On December 7, 2017, while the motion to dismiss was pending, plaintiff notified the Court that the tribunal in the Parallel Arbitration had dismissed Favianca and OIdv's claims on November 13, 2017, because the tribunal found that it was without jurisdiction with respect to the dispute that had been submitted to it.  *See* Pl.'s Suppl. Mem. in Supp. of Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. # 37] ("Pl.'s Suppl. Mem.").

during an enforcement proceeding for an award issued pursuant to the ICSID Convention.  *Id.* at 15:3–25:16.

Thereafter, the Court entered a schedule for briefing summary judgment.  *See* Min. Order (Mar. 15, 2019).  But before any briefs were filed, the parties entered into a stipulation for final judgment.  Stipulated Order for Final J. [Dkt. # 56] ("Stipulation").  The next day, new counsel for defendant, representing Venezuela under the authority of the President of the Venezuelan National Assembly, Juan Guaidó, entered an appearance, Appearance of Counsel [Dkt. # 57], and moved to strike the stipulation on the grounds that it was the Guaidó government, and not the Maduro government, that had been formally recognized by the United States.  Guaidó Gov't Emergency Mot. to Strike [Dkt. # 58].  Considering Venezuela's political climate and possible change of administration, OIEG informed the Court that it would not oppose the motion, Resp. to Emergency Mot. [Dkt. # 59], and it filed its motion for summary judgment.  *See* Pl.'s Mot.  In light of plaintiff's consent to the Guaidó government motion, the Court granted the motion to strike, *see* Min. Order (Apr. 2, 2019), but on April 4, counsel for Venezuela under the authority of the Nicolás Maduro government, which had entered into the stipulation and been litigating this case since its inception, moved for reconsideration of the motion to strike.  Maduro Gov't Mot. for Recons. [Dkt. # 65].  The Guaidó government then moved to strike the motion for reconsideration.  Guaidó Gov't Mot. to Strike Mot. for Recons. [Dkt. # 67].[2]  Both sets of attorneys for defendant also filed oppositions to the motion for summary judgment.  Guaidó Gov't Opp. to Pl.'s Mot. [Dkt. # 71] ("Guaidó Gov't Opp."); Maduro Gov't Opp. to Pl.'s Mot. [Dkt. # 72] ("Maduro Gov't Opp.").

---

2    In addition to the motions to strike, both the Maduro government and Guaidó government filed a number of other motions, including a motion to stay [Dkt. # 71] and a motion for substitution or joinder [Dkt. # 73].

After considering this unusual procedural posture, the Court ordered that the parties, including both sets of attorneys for defendant, appear in Court for a status conference. Min. Order (Apr. 10, 2019). The Court had doubts concerning its authority to determine which set of lawyers represented any defendant, much less which political leader represented a foreign sovereign. At a hearing on May 2, 2019, the lawyers for the Guaidó government informed the Court of a decision reached by the D.C. Circuit the day before that governed this issue. Status Conference Hr'g Tr. [Dkt. # 81] ("5/2 Hr'g Tr.") at 9:12–25. The Court took the matter under advisement but also inquired whether the parties could resolve the question of representation among themselves, and in the event the stipulation that had been previously negotiated might have been favorable to the Venezuelan government, it gave the Guaidó lawyers the opportunity to ascertain their client's position with respect to a stipulation. *Id.* at 10:3–9, 20:13–17. Both sets of attorneys filed notices with the Court two weeks later indicating that the Guaidó counsel were unable to obtain the necessary authorization to enter into a stipulation, Guaidó Gov't Notice [Dkt. # 82] at 1, and that the Maduro counsel did not agree to voluntarily withdraw. *Id.*; *see* Maduro Gov't Notice [Dkt. # 83] at 2.

## STANDARD OF REVIEW

ICSID's enabling statute makes clear that the Court may not re-examine the propriety of the award:

> The pecuniary obligations imposed by such an award *shall be enforced* and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.

22 U.S.C. § 1650a(a) (emphasis added). While this Circuit has not explicitly discussed a court's authority to review ICSID awards, the Second Circuit has addressed this issue. In *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, the Second Circuit observed:

> [The Federal Arbitration Act ("FAA")] prescribes grounds for vacating an arbitral award where the award was tainted by, among other things, fraud, corruption, or misconduct by the arbitrator.  By expressly precluding the FAA's application to enforcement of ICSID Convention awards, Congress intended to make these grounds of attack unavailable to ICSID award-debtors in federal court enforcement proceedings.  Congress's exclusion of the FAA's provisions from Section 1650a may suggest an expectation that actions to enforce ICSID awards would not be protracted, as emphasized by the District Court.

863 F.3d 96, 120–21 (2d Cir. 2017) (internal citations omitted), citing 112 Cong. Rec. 13148, 13149 (daily ed. June 15, 1966) (written statement of Sen. Fulbright) (conveying that substantive attack to ICSID awards on grounds provided by FAA can be made "only through the annulment proceedings provided for in the Convention," not in federal court).  Thus, courts have found "[a] member state is 'not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award;' all it may do is 'examine the judgment's authenticity and enforce the obligations imposed by the award.'" *TECO Guat. Holdings, LLC v. Republic of Guat.*, No. CV 17-102 (RDM), 2018 WL 4705794, at *2 (D.D.C. Sept. 30, 2018), quoting *Mobil Cerro*, 863 F.3d at 102; *see also Mobil Cerro Negro Ltd. v. Bolivarian Republic of Venez.*, 87 F. Supp. 3d 573, 578 (S.D.N.Y. 2015), *rev'd on other grounds*, 863 F.3d 96 (2d Cir. 2017) (noting that ICSID "determinations are final" and national courts "may review such awards solely to confirm their authenticity").

## ANALYSIS

**I.     The Court is required to recognize only the representatives of the Guaidó government.**

The D.C. Circuit has addressed the question of the legal representation of Venezuela, and its decisions are binding on this Court.  On May 1, 2019, the Court issued an Order denying a "*pro se* application" filed by Reinaldo Enrique Muñoz Pedroza, the Attorney General of the Bolivarian Republic of Venezuela under the authority of the Nicolás Maduro government.  *See*

Order, *Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*, No. 18-7044, Doc. No. 1785518

(D.C. Cir. May 1, 2019).  The application requested that the Court bar Juan Guaidó and his

representatives from arguing the appeal on behalf of Venezuela.  *Id.*  In denying the application,

the Court reasoned:

> "What government is to be regarded here as representative of a foreign
> state is a political rather than a judicial question, and is to be determined
> by the political department of the government."  The executive branch's
> "action in recognizing a foreign government . . . is conclusive on all
> domestic courts, which are bound to accept that determination . . . ."
> Furthermore, "the rights of a sovereign state are vested in the state rather
> than in any particular government which may purport to represent it, and .
> . . suit in its behalf may be maintained in our courts only by that
> government which has been recognized by the political department of our
> government as the authorized government of the foreign state."

*Id.* (internal citations omitted), quoting *Guaranty Trust Co. v. United States*, 304 U.S. 126, 137–

38 (1938).

In light of this Order, and because the United States has recognized Juan Guaidó as the

Interim President of Venezuela,[3] the Court will recognize the Guaidó government lawyers as the

---

3      *See* White House Statements & Releases, Statement from Donald J. Trump (Jan. 23,
2019) *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-
j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-
venezuela/ (last accessed May 17, 2019).

appropriate representatives of Venezuela,[4] and the Court will consider the opposition brief filed by the Guaidó government in response to plaintiff's motion for summary judgment.[5]

## II.   The Court will enter judgment in favor of the plaintiff.

The Guaidó government makes no argument against the entry of judgment in favor of the plaintiff[6] – the only issue it raises is the applicable post-judgment interest rate.   Since there has been no grounds presented to contest the authenticity of the Award, the Court will enter judgment in favor of the plaintiff and confirm the Award.

The Court notes that granting judgment in favor of the plaintiff is entirely consistent with the intent of the Maduro government as it was expressed in its March 27, 2019 stipulation to the entry of judgment for the plaintiff.  *See* Stipulation at 3.  In the event that circumstances give rise to any reason to question the legitimacy or binding nature of a judgment rendered in accordance with the D.C. Circuit's order in *Rusoro Mining*, or the position of the Department of State

---

[4]    The Court has reviewed exhibits submitted to the Court by counsel for the Maduro government, which include a decision by an ICSID arbitration panel denying representation by Guaidó government lawyers, *see* Ex. A to Notice [Dkt. # 83-1], and a recent court order from the Southern District of Florida granting a 120-day stay rather than ruling on a motion for substitution.  *See* Ex. B to Notice [Dkt. # 83-2].  Neither of these decisions are consistent with the D.C. Circuit precedent that the Court is bound to follow.

[5]    In light of this finding, the Court will deny the Maduro government's motion for reconsideration of the Court's order granting the motion to strike the stipulation for judgment, *see* Mot. for Recons. [Dkt. # 65] and the Maduro government's motion for substitution or joinder of the third-party in interest.  *See* Mot. for Substitution or Joinder of the Third-Party in Interest [Dkt. # 73].

[6]    Instead, the Guaidó government moves for a 120-day stay of the proceedings, arguing that a stay is necessary to allow the newly installed government of President Guaidó to conduct an orderly transition to democracy.  *See* Guaidó Gov't Opp. at 4–5.  But, as the Court stated during the May 2, 2019 status conference, a stay in this case would not lead to a different result and would only serve to delay plaintiff's entitlement to judgment in a case that has been pending for three years and has already been stayed once before.  Therefore, the Court finds that a stay is unnecessary and unwarranted.  *See* 5/2 Hr'g Tr. at 19:18–24.

changes, the Court has also reviewed the opposition brief filed by the Maduro government. Represented by its counsel, the Maduro government also makes no new argument in its opposition to the entry of judgment,[7] and its pleading addresses the question of the interest rate. *See* Maduro Gov't Opp. at 8–11.  The Court has separately considered the motion for summary judgment in connection with the Maduro opposition, and finds that it would grant the motion if that were the proper opposition to consider as well.

## III.   Post-Judgment Interest Rate

The sole issue raised by the Guaidó government in opposition to the motion for summary judgment is what the applicable post-judgment interest rate should be.  Venezuela asks the Court to impose post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a), which is applicable to money judgments in a civil case recovered in a district court and provides that "interest shall be calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment."  Plaintiff maintains that the post-judgment interest rate should accrue at the rate set forth in the Award: "[U]ntil the date of actual payment, [interest will be] calculated at a LIBOR interest rate for one-year deposits in U.S. dollars, plus a margin of 4%, with annual compounding of accrued interest."  Pl.'s Mem. in Supp. of its Mot. for Summ. J. [Dkt. # 61] ("Pl.'s Mem.") at 7–8; Final Award ¶ 984.

---

7       The Maduro government repeats the arguments that the Court has already rejected in ruling on the motion to dismiss, *see* Maduro Gov't Opp. at 10–11, and raises no claims that would bar the entry of judgment in accordance with ICSID and 22 U.S.C. § 1650a.  The Maduro government also argues that a genuine dispute exists as to whether the parties entered into a valid stipulation for judgment, *see* Maduro Gov't Opp. at 7–8, but the stipulation has already been stricken by the Court, *see* Min. Order (Apr. 2, 2019).  And, in any event, the judgment of the Court reflects the terms of the stipulation.  *See* Stipulation.

Under the doctrine of merger, "[w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be 'merged' in the judgment."  Restatement (Second) of Judgments § 18 cmt. a (1982); *see Bayer CropScience AG v. Dow Agrosciences, LLC*, 680 Fed. Appx. 985, 1000–01 (Fed. Cir. 2017).  Thus, numerous circuits have held that once a federal court confirms an arbitral award, the award merges into the judgment, and the federal rate of post-judgment interest presumptively applies.  *See, e.g.*, *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456–60 (5th Cir. 2013); *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1275–77 (10th Cir. 2010); *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023–24 (9th Cir. 2004).

The language of § 1961 is "mandatory" and "[i]ts terms do not permit the exercise of judicial discretion in its application."  *Carte Blanche (Sing.) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 268–70 (2d Cir. 1989).  However, the "parties may contract to, and agree upon, a post-judgment interest [rate] other than that specified in § 1961."  *Soc'y of Lloyd's v. Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005).  To do so, they must express their intent to replace the federal interest rate through "clear, unambiguous and unequivocal language."  *Westinghouse Credit Corp. v. D'Urso,* 371 F.3d 96, 102 (2d Cir. 2004).

The plaintiff does not point to contractual language here, but it submits that the Award should control.  A number of courts have held that where an award specifies an interest rate "until payment," that language does not clearly portray the intent of the parties to replace the federal interest rate.  Rather, the award must explicitly state the interest rate to be applied "post-judgment."  *See, e.g.*, *Bayer CropScience*, 680 Fed. Appx. at 1001 (rejecting the interest rate provided for in an arbitration award because it specified that it would accrue "from the date of

this Award until full payment," but did not specify it "post-judgment"); *Tricon Energy*, 718 F.3d at 456–60 (finding because the panel did not use the words "postjudgment interest," and instead stated that an 8.5% interest rate would apply "until paid," that § 1961 applied); *In re Riebesell*, 586 F.3d 782, 794–95 (10th Cir. 2009) (rejecting a provision in a note that the debt "shall accrue interest until payment at the rate of twenty-four percent" because the note did not contract for that rate "post-judgment"); *D'Urso,* 371 F.3d at 102 (rejecting an explicit agreement to apply a 15.5% interest rate to any arbitration award "from the date payment was due to the date payment is made" and instead applying the interest rate specified in § 1961).

The ICSID enabling statute states that "an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a.  Thus, it appears to the Court that once the Award is confirmed, it merges with the judgment and § 1961 applies.  *See Miminco, LLC v. Democratic Republic of the Congo*, 79 F. Supp. 3d 213, 218–19 (D.D.C. 2015) (applying § 1961 to an ICSID arbitration award).  And, because the Award sets forth that it will apply "until the date of actual payment"[8] and not "post-judgment," then accordingly, the appropriate interest rate post-judgment is set by § 1961.

Plaintiff argues that the cases cited above do not apply in this case because the precedent "originates in Federal Arbitration Act cases," and the FAA does not apply to ICSID awards. Pl.'s Reply in Supp. of Summ. J. [Dkt. # 78] ("Pl.'s Reply") at 5–6.  But the merger doctrine and whether or not § 1961 applies does not find authority in the FAA – it is a common law doctrine

---

8    The arbitration was brought pursuant to the Netherlands-Venezuela Bilateral Investment Treaty, which provides that any compensation to be awarded "shall include interest at a normal commercial rate."  *See* Agreement on Encouragement and Reciprocal Protection of Investments, Neth.-Venez., art. 6, Oct. 22, 1991, 1788 U.N.T.S. 73.  The Tribunal considered this language when it determined what interest rate should apply to the award.  Final Award ¶ 935.

that applies to all money judgments recovered in a federal district court. And the ICSID Convention provides that "courts shall treat the award as if it were a final judgment of the courts of a constituent state." ICSID Convention art. 54. If the award were simply self-executing as written, then plaintiff would not have had to come into court and request that a judgment be entered. *See* Compl., Prayer for Relief, ¶ a (seeking an order "that the pecuniary obligations in the Final Award in favor of OI European Group B.V. and against Venezuela be recognized and entered as a judgment by the Clerk of this Court in the same manner and *with the same force and effect as if the Final Award were a final judgment of this Court . . . .*") (emphasis added). *But see*, *id.* ¶ b (asking for the award plus the interest rate set forth in the award). Therefore, the Court sees no reason to deviate from this approach.

Plaintiff cites to *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, No. 14 CIV. 8163, 2015 WL 926011, at *1–3 (S.D.N.Y. Mar. 4, 2015) in support of its position that the interest rate set forth in the Award should apply. The court there found if the court "supervene[d] the ICSID panel's determination of the interest rate to apply until payment," that it could lead to the possibility of "different interest rates applying in different countries in which an arbitral award creditor sought to recognize and enforce the same ICSID award." *Id.* But, the language in the convention appears to contemplate that different countries may enforce the award differently:

> Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State. A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

ICSID Convention art. 54; *see also* 22 U.S.C. § 1650a.

Furthermore, *Mobil Cerro* discussed the tension between § 1961 and § 1650a and concluded, pursuant to canons of statutory construction, that it must adhere closely to § 1650a.[9] Thus, "when an ICSID panel like the one here awards interest 'until payment,' a federal court must recognize and enforce that pecuniary term. Any other reading of the Court's obligations would flout the plain language of the enabling statute." *Mobil Cerro*, 2015 WL 926011, at *2. In other words, even if this Court were to follow the direction of the Southern District of New York, that direction would be:  follow the statute.  And here, the Court is faced with the language in § 1650a that directs a court to give an award "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a.  This would indicate that § 1961 should apply.

Furthermore, using § 1961 to determine the post-judgment interest rate would not disregard the pecuniary obligations imposed by the Award.  The Award makes no mention of what interest rate applies "post-judgment," and the courts of this country have found that the words "until payment" do not preclude application of § 1961.  Furthermore, using § 1961 to determine the post-judgment interest rate would not render the interest rate set forth in the Award meaningless – the Award interest rate would apply in determining the interest plaintiff is entitled to for the entire pre-judgment period.  Thus, the Court finds § 1961 applies, and interest rate set

---

9       The *Mobil Cerro* court noted that the under canons of construction, "any tension between § 1961 and § 1650a must be resolved in favor of § 1650a, rather than § 1961" because "a specific statute trumps a general one," and § 1650a "is more targeted to the context of recognition and enforcement of an ICSID award than the more general § 1961."  2015 WL 926011, at *2 n.3, citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general.") (citation omitted).  Furthermore, § 1650a post-dates § 1961, and generally, a U.S. statute should be "construed so as to not conflict with international law or international agreement."  *Id.* n.5, citing Rest. (Third) of Foreign Relations Law § 114 (1987).

forth in the federal statute will apply post-judgment, and the interest rate set forth in the Award will apply pre-judgment.[10]

## CONCLUSION

For all those reasons, the Court will enter judgment for the plaintiff and confirm the Award. Plaintiff is entitled to the sum of:

- The principal amount: $372,461,982, plus interest on this amount from October 26, 2010 through the date of judgment, calculated at a LIBOR interest rate for one-year deposits in U.S. dollars, plus a margin of 4%, with annual compounding of accrued interest;

- The costs and expenses of the arbitration: $5,750,000, plus interest on this amount from March 10, 2015 through the date of judgment, calculated at a LIBOR interest rate for one-year deposits in U.S. dollars, plus a margin of 4%, with annual compounding of accrued interest;

- The costs and expenses of the annulment: $3,864,811.05, plus interest on this amount from December 6, 2018 through the date of judgment, calculated at a LIBOR interest rate for one-year deposits in U.S. dollars, plus a margin of 4%, with annual compounding of accrued interest; and

- Post-judgment interest on the total amount of the award, calculated at the rate set forth in 28 U.S.C. § 1961, from the date of judgment until full payment.

---

10 Upon consideration of the Maduro government's arguments concerning the applicable interest rate, *see* Maduro Gov't Opp. at 8–10, the Court reaches the same conclusion.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  May 21, 2019