UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OI EUROPEAN GROUP B.V., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Civil Action No. 16-1533 (ABJ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Owens-Illinois European Group ("OIEG") brought this action pursuant to 22 U.S.C. § 1650a and Article 54 of the International Centre for Settlement of Investment Disputes ("ICSID") Convention against the Bolivarian Republic of Venezuela seeking to confirm and enforce an arbitration award of more than $400 million. Compl. [Dkt. # 1]. In October of 2010, OIEG's factories were expropriated by the Venezuelan government, then headed by Hugo Chávez, and on September 7, 2011, OIEG commenced arbitration against Venezuela pursuant to the Netherlands-Venezuela Bilateral Investment Treaty. *Id.* ¶¶ 6, 12; Final Award [Dkt. # 1-10] ¶¶ 1, 110. On March 10, 2015, the tribunal found in favor of plaintiff, and it awarded OIEG $372,461,982 for the expropriation and $5,750,000 in costs and expenses. *See* Final Award [Dkt. # 1-14] ¶¶ 880–81, 976. This motion is part of plaintiff's ongoing effort to obtain the damages to which it is entitled.

Venezuela sought annulment of the award in accordance with the ICSID convention, and on December 10, 2018, the annulment application was rejected. Pl.'s Status Report [Dkt. # 52]; Annulment Comm. Decision [Dkt. # 52-1].

After a series of procedural rulings that do not bear on the pending motion, the Court set a schedule for the briefing of plaintiff's summary judgment motion in March of 2019. *See* Min. Order (Mar. 15, 2019). Before any briefs were filed, new counsel, representing Venezuela under the authority of the President of the Venezuelan National Assembly, Juan Guaidó, entered an appearance on behalf of the defendant. Appearance of Counsel [Dkt. # 57]. The new team of lawyers argued that the Guaidó government had been formally recognized by the United States, and thus representatives of the Maduro government, who had been litigating this case since its inception, were not the proper representatives of Venezuela. Guaidó Gov't Emergency Mot. to Strike [Dkt. # 58]. On April 1, 2019, plaintiff filed its motion for summary judgment. *See* Pl.'s Mot. for Summ. J. [Dkt. # 60]. Both sets of attorneys for defendant filed oppositions to the motion for summary judgment. Guaidó Gov't Opp. to Pl.'s Mot. [Dkt. # 71] ("Guaidó Gov't Opp."); Maduro Gov't Opp. to Pl.'s Mot. [Dkt. # 72] ("Maduro Gov't Opp.").

In ruling on the motion for summary judgment, the Court found that it was bound by Circuit precedent to recognize counsel for the Guaidó government as the proper representatives of Venezuela, because the United States had formally recognized the Guaidó government in January of 2019. *OI European Group v. Bolivarian Republic of Venezuela*, No. 16-cv-1533, 2019 WL 2185040 at *4–*8 (D.D.C. May 21, 2019), citing Order, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044, Doc. No. 1785518 (D.C. Cir. May 1, 2019) (holding that the determination of which government may represent of a foreign state is a political, and not a judicial, question). The Court reviewed both defense filings in an abundance of caution, however, and it entered judgment in favor of plaintiff, and post-judgment interest was awarded in accordance with 28 U.S.C. § 1961. *OI European Group*, 2019 WL 2185040 at *4–*8.

On July 25, 2019, OIEG moved for leave to register the judgment pursuant to 28 U.S.C. § 1963, Pl.'s Mot. for Leave to Register Judgment [Dkt. # 87] ("Pl.'s Mot. to Register J."), and moved for leave to seek attachment and execution pursuant to 28 U.S.C. § 1610(c). Pl.'s Mot. for Leave to Seek Attachment and Execution [Dkt. # 88] ("Pl.'s Mot. to Seek Attach."). Venezuela opposed the motions and counter-moved to stay the case for 120 days. Def.'s Counter Mot. to Stay Pl.'s Mot. to Register J. and Pl.'s Mot. to Seek Attach. [Dkt. # 92] ("Def.'s Mot. to Stay"). For the following reasons, the Court will grant plaintiff's motions for leave and deny defendant's motion to stay.

Under § 1963, a judgment may be registered "when the judgment has become final by appeal or by expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown." 28 U.S.C. § 1963. Here, OIEG is entitled to register the judgment pursuant to § 1963 because the deadline to file an appeal was June 20, 2019, and no appeal has been filed. Defendant does not contend otherwise, but instead argues that the motion is moot "[g]iven the procedural posture of the case, *i.e.*, no appeal from the judgment has been taken." Def.'s Omnibus Mem. of Law in Opp. to Pl.'s Mots. and in Supp. of its Counter-Mot. for a 120-day Stay of Enforcement Proceedings [Dkt. # 92-1] ("Def.'s Mem."). Because the parties agree that the time for an appeal has expired, and the Court need not do a "good cause" analysis to determine whether the judgment may be registered at this time, plaintiff is entitled to register the judgment, and its motion will be granted.

Under § 1610(c), where a party seeks to attach the property of a foreign state located in the United States, attachment is not permitted "until the court has . . . determined that a reasonable period of time has elapsed following the entry of judgment." 22 U.S.C. § 1610(c). The statute does not define "reasonable period of time." But the Congressional Report on this section of the

applicable legislation sets forth factors that a court should consider in determining whether to issue such an order:

> Prior to ordering attachment and execution, the court must determine that a reasonable period of time has elapsed following the entry of judgment, or in cases of a default judgment, since notice of the judgment was given to the foreign state under section 1608(e). In determining whether the period has been reasonable, the courts should take into account procedures, including legislation, that may be necessary for payment of a judgment by a foreign state, which may take several months; representations by the foreign state of steps being taken to satisfy the judgment; or any steps being taken to satisfy the judgment; or evidence that the foreign state is about to remove assets from the jurisdiction to frustrate satisfaction of the judgment.

H.R. Rep. No. 1487, 94th Cong., 2d Sess. 30, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6629; *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. 2001) (considering evidence that the foreign state is actively taking steps to pay the judgment, the steps necessary to pay the judgment, or evidence of evasion of the judgment).

The Court's opinion was issued on May 21, 2019, *OI European Group*, 2019 WL 2185040 at *4–*8, and the Clerk of Court entered judgment against defendant that same day. Clerk's J. in Favor of Pl. against Def. [Dkt. # 86]. Over five months have passed since the Clerk's entry of judgment.

Defendant, represented by counsel for the Guaidó government, argues that it is inherently unreasonable to begin enforcement proceedings at this time, because Venezuela is undergoing political upheaval and a humanitarian crisis. The Guaidó government asserts it is "functionally unable" to pay down the debt because the party recognized by the United States "lacks practical control over the Treasury or the other levers of power at home." Def.'s Mem. at 7–8. Defendant also argues that there is no evidence that the Guaidó government is attempting to avoid payment, and it represents that the Guaidó "administration is working diligently to address Venezuela's economic crisis, including its legacy public debt, all while working to resolve the country's

4

humanitarian crisis." *Id*. at 8.  It further asserts that the Guaidó government "plans to engage in an orderly, consensual debt restructuring." *Id.*  For these reasons, defendant argues that it needs time to complete the plan before addressing individual claims. *Id.* at 9.

But the political uncertainty in Venezuela is also a circumstance that bolsters plaintiff's argument that it should be allowed to seek attachment.  The "reasonable period of time" formulation is meant to allow the foreign government sufficient time to work through its internal procedures to satisfy the judgment.  Defendant has not pointed the Court to any mechanism or internal procedures through which it will satisfy the judgment.  In fact, defendant agrees that it is functionally unable to do so at this time.  It does not provide any timeline by which the debt restructuring plan will be instituted, what the plan will entail, and when plaintiff can expect satisfaction of the judgment.  It does not identify any concrete steps that Venezuela has taken to execute its plan.[1]  Indeed, defendant has averred that the Maduro regime maintains substantial control of the operation of the Venezuelan government, and the Guaidó government cannot take any actions to satisfy its debts because it is in the middle of acquiring its political power.  Vecchio Decl., Ex. 3 to Def.'s Mem. [Dkt. # 92-3] ¶¶ 6–9.  While there is no evidence of evasion, there is also no evidence of steps being taken to satisfy the judgment.

In addition, five months is typically longer than periods of time found reasonable by other courts in this district.  *See, e.g.*, Order, *Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, No. 1:14-cv-2014 (D.D.C. Jan. 20, 2016) [Dkt. # 48] (finding that two months was a reasonable time

---

[1]    Venezuela submits a declaration from Carlos Alfredo Vecchio, the Ambassador of Venezuela to the United States, stating that President Guaidó retained a "veteran debt restructuring lawyer . . . to help restructure claims against the Republic" and that the restructuring plan "will address all of the external debt of, and claims against, the Republic." Vecchio Decl., Ex. 3 to Def.'s Mem. [Dkt. # 92-3] ¶¶ 16–17.  This is the extent of the representations made regarding the plan.

under § 1610(c)); *Owens v. Republic of Sudan*, 141 F. Supp. 3d 1, 8 (D.D.C. 2015) ("[C]ourts have found periods of three months and less reasonable." (collecting citations)); *Ned Chartering*, 130 F. Supp. at 67 (finding that six weeks satisfied § 1610(c) because that period was "sufficient for most governments to pass the minor legislation necessary to appropriate funds, and to organize and transfer the appropriate assets" and because "there [wa]s no evidence that the defendant ha[d] taken any steps towards the payment of its debt").

Defendant argues that not enough time has elapsed, and it cites cases in which courts awarded relief under § 1610(c) more than a year after entry of judgment. But in all of those cases, the plaintiff did not move for § 1610(c) relief until a year or more had passed. *See Bennett v. Islamic Republic of Iran*, No. 03-cv-1486 (RCL), 2011 U.S. Dist. LEXIS 90784, at *4 (D.D.C. Jan. 25, 2011) (plaintiff did not move for 1610(c) relief until more than two years had passed since judgment entered); *Agudas Chasidei Chabad of United States v. Russian Fed'n*, 798 F. Supp. 2d 260, 264–65 (D.D.C. 2011) (section 1610(c) motion granted one year after default judgment was entered, but only three months after plaintiff certified that the judgment had been served on the defendant); *Harrison v. Republic of Sudan*, No. MC 13-80116 (JSW), 2013 U.S. Dist. LEXIS 102295, at *11–*13 (N.D. Cal. June 24, 2013) (plaintiff did not move for 1610(c) relief until 13 months after entry of default judgment). Defendant also cites to a minute order issued on November 21, 2018 by another court in this district, in which the court denied a motion for relief under § 1610(c). *See* Def.'s Mem. at 8 n.3, citing *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, 16-cv-2020 (D.D.C. Nov. 21, 2018). But in that case, the motion to seek attachment was filed a mere twenty days after judgment was entered. Thus, all of defendant's cited authorities do not weigh in its favor.

6

The Court also notes that in the past year, another creditor has sought attachment of Venezuelan assets to satisfy its debts, and a court in another district has granted attachment, despite Venezuela's political instability. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2889 (3d Cir. July 29, 2019), Ex. 1 to Pl.'s Notice of Suppl. Auth. [Dkt. # 90-1] (stating that the district court had acted within its jurisdiction when it issued a writ of attachment to satisfy plaintiff's judgment against Venezuela).[2] Plaintiff points out that if the Court were to grant its motions for leave, it would serve the interests of judicial economy since the District of Delaware would be able to address the competing claims to the Venezuelan assets. Furthermore, defendant may move for a stay or argue against attachment in this other district. *See* Pl.'s Suppl. Mem. in Supp. of its Motions for Relief [Dkt. # 100] at 1–2.

The Court recognizes that Venezuela is undergoing a severe humanitarian crisis, and this ruling is not meant to ignore or minimize the plight of the country's citizens. But, plaintiff's assets were confiscated in 2010, and ICSID issued this award to OIEG over four years ago – before this crisis began. Both the Maduro government and Guaidó government have defended this lawsuit and have had the benefit of this court's legal process. Furthermore, defendant's motion for a stay does not set forth any facts from which the Court can infer that the funds or properties that plaintiff wishes to attach have been or will be used for the benefit for the Venezuelan people. And Venezuela has not represented that it will be able to satisfy the judgment in 120 days, or that the Guaidó government will be in a position to do anything other than request another stay at the end

---

2    The Third Circuit also lifted a stay of enforcement proceedings that it had entered. Pl.'s Suppl. Mem. in Supp. of its Motions for Relief [Dkt. # 98]. Defendant advised the Court that the District of Delaware had an independent stay imposed that currently remains in effect. Def.'s Mem. in Response to Pl.'s Suppl. Mem. [Dkt. # 99]. The creditor in that case is seeking to lift the stay in the district court to proceed with attachment. *See* Pl.'s Suppl. Mem. in Supp. of its Motions for Relief [Dkt. # 100].

of the 120 days.  A stay in this case would only serve to delay plaintiff's entitlement to a judgment.  The Court is mindful that the country is experiencing political upheaval, but it may take years to stabilize the country and fully transition to another political regime, and it would not be appropriate or fair to the plaintiff to stay the case indefinitely until that transition is completed.

Therefore, it is

**ORDERED** that plaintiff's motion for leave to register judgment pursuant to § 1963 [Dkt. # 87] is **GRANTED**.  It is

**FURTHER ORDERED** that plaintiff's motion for leave to seek attachment and execution pursuant to § 1610(c) [Dkt. # 88] is **GRANTED**.  It is

**FURTHER ORDERED** that defendant's counter-motion for a 120-day stay [Dkt. # 92] is **DENIED**.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE:  November 1, 2019